UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE DANIEL CASTILLO-ANTONIO,<br><br>    Plaintiff,<br><br>    v.<br><br>SARA IQBAL, et al.,<br><br>    Defendants. | Case No. 14-cv-03316-KAW<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 71 |

On July 22, 2014, Plaintiff Jose Daniel Castillo-Antonio filed the instant suit, alleging violations of the Americans with Disabilities Act ("ADA") and California civil rights statutes, specifically the Unruh Civil Rights Act, California Disabled Persons Act, and California Health and Safety Code § 19955 *et seq.*, California Civil Code §§ 54, 54.1, and 54.3, and California's Unruh Civil Rights Act. (Dkt. No. 1.) On October 17, 2016, Plaintiff moved for partial summary judgment. (Plf.'s Mot., Dkt. No. 71.) Upon consideration of the moving and responding papers, as well as the arguments presented at the December 15, 2016 motion hearing, and for the reasons set forth below, Defendant's motion is GRANTED.

**I.    BACKGROUND**

**A.    Factual Background**

In 2009, Plaintiff suffered a gunshot wound which caused permanent spinal injuries that require him to use a wheelchair. (Castillo-Antonio Decl. ¶ 1, Dkt. No. 71-8.) On May 2, 2014 and July 9, 2014, Plaintiff states that he visited the Union 76 gas station at issue in this suit, in order to buy food and lottery tickets. (Second Amended Complaint ¶ 13, SAC, Dkt. No. 12.) Castillo-Antonio Decl. ¶ 4.) The Union 76 gas station is located close to Plaintiff's residence, and is on the way to places that Plaintiff regularly visits, including Costco, a nearby dog park, and the

Bay where Plaintiff fishes. (Castillo-Antonio Decl. ¶ 3.)

When Plaintiff visited the Union 76 gas station, Plaintiff alleges that he encountered barriers in the parking lot. Specifically, Plaintiff states that the designated handicapped parking spot was not in compliance with federal and state laws regarding handicapped spaces, including that: (1) the space was not 18 feet long, (2) the space had a slope of over 2%, (3) there was no discernable accessible path of travel from the space to the front entrance of the store, (4) the loading zone did not have a "no parking" sign painted in it, (5) the signage did not include a $250 fine" warning, and (6) the handicapped symbol on the asphalt was faded. (Castillo-Antonio Decl. ¶ 4(a).) As a result of these deficiencies, Plaintiff contends that he was concerned about parking safely and making his way to the front entrance through cross-traffic with his daughter, who was accompanying him. This was because to reach the front entrance, Plaintiff had to pass through an area that vehicles go through to park in non-disabled spots and access the gas pumps. Further, there was a slope that made getting in and out of his vehicle more difficult because his wheelchair could roll away. (*Id.*)

Plaintiff also used the restroom when he visited on July 9, 2014. (Castillo-Antonio Dep. at 72:17-19, Dkt. No. 88-2; Sara Iqbal Decl. ¶ 6, Dkt. No. 88-3.) Plaintiff states that the restroom was not in compliance with federal and state laws regarding handicapped spaces, including certain specified distances between the toilet and wall, grab bar, and toilet paper dispenser. (Castillo-Antonio Decl. ¶ 4(b).) The soap dispenser was also mounted too high, and the restroom door required more than five pounds of pressure to push open. As a result of these deficiencies, Plaintiff contends that the bars' wrong position caused him to strain and stretch more than he was able to stretch, that he was not able to use the toilet paper because he could not reach it, that he had difficulty using the toilet, and that he could not open the door without assistance. (Castillo-Antonio Dep. at 73:22-24, 78:1-9; 78:19-79:1; Castillo-Antonio Decl. ¶ 4(b).) There was also insufficient space at the doorway, making it more difficult to maneuver. (Castillo-Antonio Decl. ¶ 4(b).)

During Plaintiff's July 9, 2014 visit, Defendant Sara Iqbal admits to having followed Plaintiff around the premises, photographing and filming him. (Sara Iqbal Decl. ¶ 9.)

1   On July 12, 2014, Defendant hired an inspector, Susan Pae, to inspect the Union 76 gas
2   station. (Plf.'s Mot., Exh. 6, Pae Report at 3.) Ms. Pae found noncompliant conditions including
3   the lack of an accessible path from the public sidewalk to the entrance; the exterior landing
4   exceeding 2% maximum slope; accessibility problems with the toilet, grab bars, toilet paper
5   dispenser, and soap dispenser; and the need for more than 5 pounds pressure to operate the
6   restroom door. (Pae Report at 1-2.)

**B.  Procedural Background**

Plaintiff filed this action on July 22, 2014. Pursuant to General Order No. 56, the parties conducted a joint inspection on March 20, 2015. (Cortez Decl. ¶ 5, Dkt. No. 71-10.) Following the March 20, 2015 inspection, Plaintiff's expert, Mr. Roberto Cortez, produced a report finding noncompliant conditions including that the parking space was in excess of 2%, accessibility problems with the hand towel dispenser and grab bar location. (Cortez Decl., Exh. 2, Cortez Report Item Nos. 4.7, 8.18, 8.39, 8.41.) Mr. Cortez also found noncompliant conditions in the store, such as the counter being too high. (Cortez Report Item No. 5.3.) The parties also conducted a follow-up inspection on October 19, 2015, where Mr. Cortez found that the cross slope of the loading zone still exceeded 2%. (Cortez Decl., Exh. 3, Cortez Follow-Up Report at 2.)

On October 17, 2016, Plaintiff filed the instant motion for summary judgment on the following issues: (1) that certain barriers existed at Defendants' Union 76 gas station when Plaintiff visited the business on May 2, 2014 and July 9, 2014; (2) that Plaintiff personally encountered these barriers; and (3) that one barrier still exists, entitling Plaintiff to an injunction, damages, and attorney's fees. Plaintiff also seeks an award of statutory damages under the Unruh Act. (Plfs.' Mot. at 20.) Defendants filed their opposition on November 4, 2016. (Defs.' Opp'n, Dkt. No. 88; Defs.' Mem. of Opp'n, Dkt. No. 88-4.) Plaintiff filed his reply on November 9, 2016. (Plf.'s Reply, Dkt. No. 89.)

## II.  LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a).

Summary judgment is appropriate when, after adequate discovery, there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Southern Calif. Gas. Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may discharge its burden of production by either (1) "produc[ing] evidence negating an essential element of the nonmoving party's case" or (2) after suitable discovery, "show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to discharge its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000); *see also Celotex*, 477 U.S. at 324-25.

Once the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 250. "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001). "Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Id.* (citations and quotations omitted). The non-moving party must produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NMS Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of material fact to

4

defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. at 255; *Hunt v. City of Los Angeles,* 638 F.3d 703, 709 (9th Cir. 2011).

### III.   DISCUSSION

#### A.   Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") was passed in order "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(2). Title III prohibits discrimination by public accommodations, stating: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). In order to prevail on a Title III claim, a plaintiff must demonstrate that: "(1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodations; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

As to this third element, "[t]he concept of 'discrimination' under the ADA does not extend only to obviously exclusionary conduct . . . . Rather, the ADA proscribes more subtle forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals' 'full and equal enjoyment' of places of public accommodation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011). Thus, "discrimination by public accommodations includes 'a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded [or] denied services . . . unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.'" *Arizona ex rel. Goddard v. Harkins Amusement Enters.*, 603 F.3d 666, 670 (9th Cir.

2010) (quoting 42 U.S.C. § 12182(b)(2)(A)(iii)); *see also Molski* 481 F.3d at 730 ("Discrimination includes a failure to remove architectural barriers in existing facilities where such removal is readily achievable") (internal quotation and modifications omitted). In particular, the ADA Accessibility Guidelines ("ADAAG") "lay out the technical structural requirements of places of public accommodations," providing objective standards for architectural features. *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1080-81 (9th Cir. 2004).

      **i.    Plaintiff's ADA Claim**

In the instant case, the parties do not dispute that Plaintiff is disabled within the meaning of the ADA, or that Defendants' property is a place of public accommodation. (Plf.'s Mot. at 14; Defs.' Mem. of Opp'n at 4.) As to the third element, Plaintiff has provided a declaration stating that on his visits to Defendants' property, he encountered certain barriers at the parking lot and the restroom, which were not in compliance with accessibility requirements. (Castillo-Antonio Decl. ¶ 4.) Plaintiff has also provided expert reports, including one conducted by an expert hired by Defendant two days after Plaintiff's second visit to the facility, which confirm the existence of noncompliant conditions that Plaintiff encountered, as well as additional barriers in the store. (*See* Pae Report Item Nos. 3 (exterior landing at convenience store entry doors exceed 2% maximum slope), 9 (toilet was too far from side wall), 11-12 (grab bars incorrectly positioned), 13 (toilet paper dispenser incorrectly located), 14 (soap dispenser incorrectly located) 15 (restroom door required more than 5 pounds of pressure to operate), 19 (coffee and microwave counter out of accessible reach range); Cortez Report Item Nos. 4.7 (accessible parking space had a slope in excess of 2%), 8.18 (hand towel dispenser too high), 8.39, 8.41 (grab bar incorrectly positioned).)

Defendants do not dispute the accuracy of these reports, and admit that "some of the areas of their business identified in Plaintiff's motion are not in exact technical specifications as required by the applicable Federal and State laws." (Defs.' Opp'n at 4; Defs.' Mem. in Opp'n at 6-7.) Defendants also do not appear to suggest that removal of the barriers encountered by Plaintiff was not readily achievable.[1] Instead, Defendants argue that regardless of the existence of the barriers,

---

[1] Based on Mr. Cortez's follow-up report, many of the noncompliant conditions have been corrected, with the exception of the cross slope of the loading zone still exceeding 2%. (Cortez

6

and Plaintiff's encounter of those barriers, there is a factual dispute over: (1) whether Plaintiff actually visited Defendants' business on May 2, 2014, and (2) whether Plaintiff was denied full and equal enjoyment of Defendants' business, as he was still able to use the business's services on his visits. (*Id.* at 2; Defs.' Mem. of Opp'n at 4.)

With respect to Plaintiff's visit to Defendants' business on May 2, 2014, the Court finds there is no dispute of material fact. Defendant has not provided any evidence to show that Plaintiff did *not* visit Defendants' business on May 2, 2014. At most, Defendant Sara Iqbal provides a declaration which states that she was at the business on May 2, 2014, but that she does not remember Plaintiff being present. (Iqbal Decl. ¶¶ 3-4.) The fact that Ms. Iqbal does not remember whether Plaintiff was present is not evidence that Plaintiff did *not* visit; it simply means Ms. Iqbal does not remember. Moreover, Ms. Iqbal testified at deposition that she did not remember what hours she was at the business on May 2, 2014, meaning that Plaintiff could very well have visited while she was not present. (Plf.'s Reply, Exh. 1, Sara Iqbal Dep. at 20:21-24.) By contrast, Plaintiff has provided an affirmative declaration stating unequivocally that he was present on May 2, 2014, which Defendants provide no evidence to contradict. (Castillo-Antonio Decl. ¶ 4.) Thus, given Plaintiff's uncontroverted statement that he visited Defendants' business on May 2, 2014 there is no dispute of material fact as to whether Plaintiff visited on May 2, 2014.

As to Defendants' argument that Plaintiff was not denied full and equal enjoyment, the Court finds that this is ultimately a challenge to Plaintiff's standing, not to the merits of Plaintiff's ADA claim. Defendants do not dispute that Plaintiff met barriers when visiting Defendants' business, or that those barriers cannot be readily removed; rather, Defendant disputes whether Plaintiff was *impacted* by those barriers, *i.e.*, prevented from being "able to do what he needed to do." (Defs.' Mem. of Opp'n at 5.) In short, Defendants contend that Plaintiff was not injured by the presence of barriers because he was able to "transact his business and leave," and therefore lacks standing to seek relief on his ADA claim. (*Id.*)

Defendants' argument is contrary to Ninth Circuit authority. In *Chapman*, the Ninth

---

Follow-Up Report at 2.) Thus, there can be no genuine dispute that the removal of those barriers was not readily achievable.

1    Circuit explained that "[u]nder the ADA, when a disabled person encounters an accessibility
2    barrier violating its provisions, it is not necessary for standing purposes that the barrier completely
3    preclude the plaintiff from entering or using a facility in any way." 631 F.3d at 947; *see also*
4    *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 n.4 (9th Cir. 2008) (explaining that a disabled
5    person does not need to be "prevented from attempting to enter a place of public accommodation
6    altogether"). Instead, "the barrier need only interfere with the plaintiff's 'full and equal enjoyment'
7    of the facility." *Chapman*, 631 F.3d at 947. Applying *Chapman*, the Ninth Circuit in *Oliver v.
8    Ralphs Grocery Co.* found that there was sufficient evidence of injury in fact where the plaintiff
9    filed a sworn declaration that he had visited a Food 4 Less's restroom and found it difficult to use
10   the accessible stall due to the lack of proper hardware, the position of the grab bar, and the
11   position of the soap dispenser and hand dryer. 654 F.3d 903, 908 (9th Cir. 2011). "These
12   undisputed facts demonstrate that [the plaintiff] personally encountered barriers at the Food 4 Less
13   store that impaired his full and equal enjoyment of the facility due to his particular disability." *Id.*
14   Thus, under *Chapman*, the plaintiff "had standing to sue as to those barriers as well as all other
15   barriers related to his disability." *Id.* (internal quotation omitted).

16         Like the plaintiff in *Oliver*, Plaintiff has submitted a declaration explaining how the
17   barriers made it difficult for him to use the facilities. Specifically, Plaintiff states that he was
18   affected by the parking conditions because he was concerned about parking safely, making his
19   way to the front door through cross traffic, and had additional challenges getting in and out of his
20   vehicle due to the slope as his wheelchair could roll away. (Castillo-Antonio Decl. ¶ 4(a).)
21   Furthermore, when Plaintiff used the restroom on July 9, 2014, he states that he was required to
22   strain and stretch more than he was able to stretch due to the noncompliant position of the bars,
23   that he had difficulty getting on and off the toilet, that he was not able to use the toilet paper
24   because he could not reach it, and that he could not open the door without another person's
25   assistance. (Castillo-Antonio Dep. at 73:22-24, 78:1-9; 78:19-79:1; Castillo-Antonio Decl. ¶
26   4(b).)

27         Defendants do not provide any evidence contradicting Plaintiff's declaration or deposition
28   testimony. Instead, Defendants argue that because Plaintiff was able to purchase the candy and

beverage he had gone to the business to purchase, he had full and equal enjoyment of Defendants' business, regardless of whether Plaintiff had difficulty with the parking conditions or using the restroom.[2]  (Defs.' Mem. in Opp'n at 4-5.)  Defendants would essentially require that a disabled individual be unable to access or use a facility at all before they are able to seek relief; Defendants provide no legal authority for this position, which conflicts with binding Ninth Circuit authority. Simply because a disabled individual is able to carry out their intended purpose in visiting a business does not mean they have full and equal enjoyment; if a disabled individual is forced to overcome difficulties that a non-disabled individual does not, as is the case here, they do not have full and equal access.  Additionally, to the extent Defendants argue that Plaintiff is required to seek assistance during his visits, Defendants provide no case law suggesting that a disabled individual is required to complain to a business about a potential ADA violation prior to filing a lawsuit.[3]  (*See* Defs.' Mem. in Opp'n at 6.)

Taking Defendants' arguments to their logical extreme, a disabled individual would always have full and equal access as long as she is able to send another person into a store to purchase the goods she had wanted to purchase, even if the store has barriers that prevent the disabled individual from entering the store altogether.[4]  Such a conclusion is contrary to the purpose of the ADA.

The Court finds that Plaintiff has established that he is a disabled individual who visited Defendants' business, a place of public accommodation.  While visiting Defendants' business, Plaintiff encountered barriers that were not in compliance with federal and state law.  There is no evidence that these barriers could not be easily removed.  Moreover, these barriers caused Plaintiff

---

[2] Defendants also focus heavily on the fact that Plaintiff has filed over 80 other lawsuits alleging ADA violations, including suing 9 other businesses for visits he made on May 2, 2014.  (Defs.' Opp'n at 2-3.)  These other lawsuits are not relevant to the merits of the instant case, namely whether Plaintiff encountered barriers when he visited *Defendants'* business.

[3] Even if that was the case, Plaintiff testified at his deposition that he did require assistance to get the restroom door open.  (Castillo-Antonio Dep. at 78:23-79:6.)

[4] Indeed, Defendants appear to suggest that this would be sufficient when they focus on Plaintiff's uncle being present at the store visits, and that Plaintiff could have gotten out of the vehicle to buy the snacks that Plaintiff wanted to purchase at Defendants' business.  (*See* Defs.' Mem. in Opp'n at 3-4.)

1  difficulty in using the facilities, including at the parking lot and in the restroom. Accordingly, the
2  Court concludes that Plaintiff has established an ADA claim.

### ii. Injunctive Relief

After establishing an ADA claim, private parties "may obtain injunctive relief against public accommodations with architectural barriers, including an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities." *Molski*, 481 F.3d at 730 (internal quotation omitted). "Monetary damages are not available in private suits under Title III of the ADA . . . ." *Id.* "Because a private plaintiff can sue only for injunctive relief (i.e., for removal of the barrier) under the ADA, a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim." *Oliver*, 654 F.3d at 903. In order to seek injunctive relief, a plaintiff must demonstrate a likelihood of future injury. *Chapman*, 631 F.3d at 946. Sufficient likelihood of future harm can be established when a plaintiff shows that "he intends to return to a noncompliant place of public accommodation where he will likely suffer repeated injury," or that "he is deterred from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there." *Id.* at 948, 949.

Here, Plaintiff has provided Cortez's Follow-Up Report from the October 19, 2015 inspection, which found that the accessible path of travel had been improved, that the accessible parking stall had been repaired, that proper signage was installed, and that the restroom was acceptable for accessibility. (Cortez Follow-Up Report at 1-2.) The Report, however, finds that "the cross slope of the loading zone still exceeds the 2% required by code," which is not compliant with the Federal ADA Standards for Accessible Design § 503.4. (*Id.* at 2; *see also* Cortez Report Item No. 4.7.) Defendants do not provide any evidence that this barrier has been fixed, and conceded at the hearing that the loading zone was still not in compliance. Thus, the only evidence in the record is that there is a remaining barrier as of October 19, 2015, and that this barrier has not been removed. Further, Plaintiff has provided a declaration stating that he passes by Defendants' business regularly when he goes from his home to Costco, Point Isabel, and the Bay, suggesting a high likelihood that he will return to Defendants' business and thus establishing sufficient

likelihood of future harm.  (Castillo-Antonio Decl. ¶ 3.)  The Court therefore concludes that Plaintiff is entitled to injunctive relief under the ADA, specifically to remove the 2% slope at the cross slope.

### B. Unruh Civil Rights Act

Plaintiff also brings a claim under California statutes, including the Unruh Civil Rights Act and the California Disabled Persons Act.  The Ninth Circuit has explained that "[i]n the disability context, California's Unruh Civil Rights Act operates virtually identically to the ADA," such that "[a]ny violation of the ADA necessarily constitutes a violation of the Unruh Act. *Molski*, 481 F.3d at 731; *see also* Cal. Civil Code § 51(f) ("A violation of the right of any individual under the federal Americans with Disabilities Act of 1990 shall also constitute a violation of this section").  Unlike the ADA, however, the Unruh Act does allow for monetary damages, stating that: "Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51 . . . is liable for each and every offense for the actual damages . . . up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000) and any attorney's fees that may be determined by the court . . . ."  Cal. Civil Code § 52(a).  A victim of discrimination, however, "need not prove she suffered actual damages to recover the independent statutory damages of $4,000." *Molski*, 481 F.3d at 731.  Furthermore, "no showing of intentional discrimination is required where the Unruh Act violation is premised on an ADA violation" to award damages under the Unruh Act.  *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 847 (9th Cir. 2004).

As discussed above, Plaintiff has established a violation of the ADA based on his visits on May 2, 2014 and July 9, 2014.  Because Plaintiff has established a violation of the ADA, he has necessarily established a violation of the Unruh Act, and is therefore entitled to statutory damages of $8,000 ($4,000 for each visit), as well as attorney's fees.[5]

---

[5] Like the Unruh Act, the California Disabled Persons Act also states that a violation under the ADA constitutes a violation of the California Disabled Persons Act.  Cal. Civ. Code § 54(c).  The statute also entitles a plaintiff to damages of no less than $1,000 per violation.  Cal. Civ. Code § 54.3(a).  A person cannot, however, be held liable for damages under both the California Disabled Persons Act and the Unruh Act.  Cal. Civ. Code § 54.3(c).  Thus, Plaintiff seeks only the statutory damage award provided by the Unruh Act.  (Plf.'s Mot. at 20.)

### IV. CONCLUSION

The Court GRANTS Plaintiff's motion for partial summary judgment, and finds that: (1) Plaintiff has established an ADA violation, (2) Plaintiff has established an Unruh Act violation, based on the ADA violation, and (3) a barrier exists on Defendants' business property. The Court therefore finds that Plaintiff is entitled to injunctive relief, and Defendant is hereby ordered to remove the remaining barrier. Further, Plaintiff is entitled to $8,000 in statutory penalties under the Unruh Act, based on his encountering barriers during his May 2, 2014 and July 9, 2014 visits. Plaintiff is also entitled to attorney's fees under the Unruh Act.

The parties are ORDERED to meet and confer by January 20, 2017 regarding the amount of attorney's fees and costs to be awarded. In the event the parties are able to reach an agreement on the foregoing, they shall submit a stipulation and proposed order for the Court's review. If no agreement is reached, Plaintiff shall file a motion for attorney's fees. The proposed stipulation or motion for attorney's fees is due by February 3, 2017. During the hearing on this matter, Plaintiff also indicated that he would be dropping any remaining claims in this case; Plaintiff shall therefore also file a notice of voluntary dismissal of any remaining claims by February 3, 2017. The Court VACATES the trial date and any pre-trial deadlines, per the parties' agreement that the February 6, 2017 trial date should be vacated.

IT IS SO ORDERED.

Dated: December 21, 2016

_____
KANDIS A. WESTMORE
United States Magistrate Judge