UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE DANIEL CASTILLO-ANTONIO, <br> Plaintiff, <br> v. <br> SARA IQBAL, et al., <br> Defendants. | Case No. 14-cv-03316-KAW <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS, AND FOR MISCELLANEOUS RELIEF** <br><br> Re: Dkt. No. 98 |

On July 22, 2014, Plaintiff Jose Daniel Castillo-Antonio filed the instant suit, alleging violations of the Americans with Disabilities Act ("ADA") and California civil rights statutes, including the Unruh Civil Rights Act, California Disabled Persons Act, and California Health and Safety Code § 19955 *et seq.* (Dkt. No. 1.) On December 21, 2016, the Court granted Plaintiff's motion for partial summary judgment, finding that Plaintiff had established violations of the ADA, Unruh Civil Rights Act, and the California Disabled Persons Act. (Summary Judgment Ord. at 10-11, Dkt. No. 95.) The Court found that Plaintiff was entitled to injunctive relief under the ADA, as well as statutory penalties under the Unruh Civil Rights Act. (*Id.* at 12.) The Court also ordered the parties to meet and confer regarding the amount of attorney's fees and costs, and directed Plaintiff to file a motion for attorney's fees if the parties could not agree. (*Id.*) Subsequently, Defendants appealed the Court's summary judgment order. (Dkt. No. 96.)

On February 1, 2017, Plaintiff filed a motion for attorney's fees, seeking $75,360 in attorney's fees and $8,330.19 in costs and expenses, as well as $6,700 for attorney's fees incurred to bring the instant motion. (Plf.'s Mot. ¶ 1, Dkt. No. 98.) Plaintiff also seeks miscellaneous relief regarding the form of Defendant Wassem Iqbal's name, and the form of the "dba" designation and "individual" designation for Defendants Sara Iqbal, Wassem Iqbal, and Bushra Begum. (*Id.*)

The Court deemed the matter suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b), and vacated the hearing previously set for March 16, 2017. (Dkt. No. 106.) Upon consideration of the papers, and for the reasons set forth below, Plaintiff's motion is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

### A. Factual Background

In 2009, Plaintiff suffered a gunshot wound which caused permanent spinal injuries that require him to use a wheelchair. (Castillo-Antonio Decl. ¶ 1, Dkt. No. 71-8.) On May 2, 2014 and July 9, 2014, Plaintiff visited the Union 76 gas station at issue in this suit, in order to buy food and lottery tickets. (Second Amended Complaint ¶ 13, SAC, Dkt. No. 12; Castillo-Antonio Decl. ¶ 4.) The Union 76 gas station is located close to Plaintiff's residence, and is on the way to places that Plaintiff regularly visits, including Costco, a nearby dog park, and the Bay where Plaintiff fishes. (Castillo-Antonio Decl. ¶ 3.)

When Plaintiff visited the Union 76 gas station, Plaintiff encountered barriers in the parking lot. Specifically, Plaintiff states that the designated handicapped parking spot was not in compliance with federal and state laws regarding handicapped spaces, including that: (1) the space was not 18 feet long, (2) the space had a slope of over 2%, (3) there was no discernable accessible path of travel from the space to the front entrance of the store, (4) the loading zone did not have a "no parking" sign painted in it, (5) the signage did not include a $250 fine" warning, and (6) the handicapped symbol on the asphalt was faded. (Castillo-Antonio Decl. ¶ 4(a).) As a result of these deficiencies, Plaintiff was concerned about parking safely and making his way to the front entrance through cross-traffic with his daughter, who was accompanying him. This was because to reach the front entrance, Plaintiff had to pass through an area that vehicles go through to park in non-disabled spots and access the gas pumps. Further, there was a slope that made getting in and out of his vehicle more difficult because his wheelchair could roll away. (*Id.*)

Plaintiff also used the restroom when he visited on July 9, 2014. (Castillo-Antonio Dep. at 72:17-19, Dkt. No. 88-2.) Plaintiff states that the restroom was not in compliance with federal and state laws regarding handicapped spaces, including certain specified distances between the toilet

1   and wall, grab bar, and toilet paper dispenser.  (Castillo-Antonio Decl. ¶ 4(b).)  The soap dispenser

2   was mounted too high, and the restroom door required more than five pounds of pressure to push

3   open.  As a result of these deficiencies, Plaintiff states that the bars' wrong position caused him to

4   strain and stretch more than he was able to stretch, that he was not able to use the toilet paper

5   because he could not reach it, that he had difficulty using the toilet, and that he could not open the

6   door without assistance.  (Castillo-Antonio Dep. at 73:22-24, 78:1-9; 78:19-79:1; Castillo-Antonio

7   Decl. ¶ 4(b).)  There was also insufficient space at the doorway, making it more difficult to

8   maneuver.  (Castillo-Antonio Decl. ¶ 4(b).)

### B. Procedural Background

Plaintiff filed this action on July 22, 2014.  On June 3, 2016, Plaintiff filed a request for a further case management conference and other miscellaneous relief, describing various discovery disputes between the parties.  (Dkt. No. 40.)  On June 10, 2016, the Court issued an order, requiring the parties to meet and confer regarding any outstanding discovery issues and stating that "the parties are expected to resolve their disputes without further judicial intervention."  (Dkt. No. 43.)  Defendants filed their response to the request the day after the Court issued its ruling. (Dkt. No. 44.)

On August 10, 2016, Plaintiff filed a motion to amend the case management scheduling order to extend deadlines for discovery and to amend pleadings.  (Dkt. No. 54.)  Defendants did not file an opposition, and the Court granted in part and denied in part Plaintiff's motion, extending the discovery deadline.  (Dkt. No. 59.)

On September 14, 2016, Plaintiff filed a request for miscellaneous relief, based on Defendant Sadia Ghani Iqbal's refusal to produce certain discovery, and explaining that Defendants' counsel refused to participate in the joint letter process.  (Dkt. No. 61 ¶¶ 7-8.)  On September 19, 2016, the parties filed a joint letter on a separate discovery dispute, regarding Defendant Wassem Iqbal's deposition.  (Dkt. No. 63.)  On September 21, 2016, the Court terminated Plaintiff's September 14, 2016 request, and ordered Defendant Sadia Ghani Iqbal to provide her portion to the joint letter.  (Dkt. No. 67.)  Defendant Sadia Ghani Iqbal did not comply, prompting Plaintiff to file another request for miscellaneous relief on October 10, 2016,

based on both Defendant Sadia Ghani Iqbal's and Defendant Wassem Iqbal's refusal to provide certain discovery. (Dkt. No. 69 ¶¶ 7-9.) On October 14, 2016, the Court issued an order on the September 19, 2016 discovery letter and the October 10, 2016 request for miscellaneous relief; the Court terminated the request for miscellaneous relief and again ordered Defendants to provide their portion to the joint letter. (Dkt. No. 70 at 2.) The Court also issued an order to show cause, requiring Defendants' counsel to explain why he should not be sanctioned for failing to comply with the Court's September 21, 2016 order. (*Id.* at 3.) On October 21, 2016, Defendants' counsel responded to the order to show cause, stating that they had not complied with the prior orders due to "server and email issues over the past 6 months," but that they had decided to provide the discovery at issue. (Dkt. No. 78 at 1-2.) The Court then discharged the order to show cause. (Dkt. No. 81.)

On October 17, 2016, Plaintiff filed a motion for partial summary judgment on the following issues: (1) that certain barriers existed at Defendants' Union 76 gas station when Plaintiff visited the business on May 2, 2014 and July 9, 2014; (2) that Plaintiff personally encountered these barriers; and (3) that one barrier still exists, entitling Plaintiff to an injunction, damages, and attorney's fees. (Dkt. No. 71.) After briefing and a hearing on the matter, the Court granted Plaintiff's motion in full, awarding injunctive relief under the ADA and statutory damages under the Unruh Civil Rights Act. (Summary Judgment Ord. at 12.) The Court also ordered the parties to meet and confer regarding the amount of attorney's fees and costs to be awarded. (*Id.*) If no agreement was reached, Plaintiff was to file a motion for attorney's fees.

On January 19, 2017, Defendants filed an appeal of the Court's summary judgment order. (Dkt. No. 96.) Plaintiff then filed the instant motion for attorney's fees and expenses, and seeking miscellaneous relief. Defendants' opposition was due on February 15, 2017. (*See* Civil L.R. 7-3(a) ("The opposition must be filed and served not more than 14 days after the motion was filed").) Defendants failed to timely oppose; on February 16, 2017, the Court issued an order to show cause, requiring Defendants, on or before February 23, 2017, to 1) file an opposition or statement of non-opposition to Plaintiff's motion, and 2) respond to the order to show cause by explaining why they did not file a timely opposition. (Dkt. No. 101.) On February 24, 2017,

1  Defendants filed a response to the order to show cause, stating that they could not file an
2  opposition by February 23, 2017 because Defendants' counsel's server allegedly stopped working.
3  (Dkt. No. 102 ¶ 1.)  Defendants requested an extension of time to file their opposition until
4  February 28, 2017.  (*Id.* ¶ 3.)  The Court granted the request for an extension of time, but also
5  ordered Defendants' counsel to respond to the February 16, 2017 order to show cause by
6  explaining why he did not file a timely opposition on February 15, 2017. (Dkt. No. 103.)  On
7  February 28, 2017, Defendants filed their opposition to Plaintiff's motion; Defendants, however,
8  again failed to respond to the February 16, 2017 order to show cause.  (Defs.' Opp'n, Dkt. No.
9  104.)  No reply was filed.

## II. LEGAL STANDARD

The ADA provides: "In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs . . . ."  42 U.S.C. § 12205.  The Ninth Circuit has made clear that "[a] prevailing party under the ADA should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust," observing that "[i]f successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive power of the federal courts." *Jankey v. Poop Deck*, 537 F.3d 1122, 1130, 1131 (9th Cir. 2008) (internal quotations omitted).  Thus, "recovery is the rule, rather than the exception." *Id.* (internal quotation omitted).

Likewise, the California Civil Code provides that the prevailing party in an action asserting "a violation of Section 54 or 54.1 of this code" "shall be entitled to recover reasonable attorney's fees." Cal. Civ. Code § 55.  California Civil Code § 54(c) states that "[a] violation of the right of an individual under the [ADA] also constitutes a violation of this section."  Thus, a plaintiff who demonstrates an ADA violation is also entitled to attorney's fees under California Civil Code § 55.

"The calculation of a reasonable fee award is a two-step process." *Kalani v. Starbucks Corp.*, Case No. 13-cv-734-LHK, 2016 WL 379623 at *4 (citing *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000)).  At the first step, the court "calculat[es] the 'lodestar figure,' or

1   presumptive award, by multiplying the hours reasonably spent on the litigation by the attorney's

2   reasonable hourly rate." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  The

3   Supreme Court has cautioned, however, that "[h]ours that are not properly billed to one's *client*

4   also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley*, 461 U.S.

5   at 434 (internal quotation omitted).  "Accordingly, the district court should exclude from this

6   initial calculation hours that were not reasonably expended, including where a case is overstaffed

7   or where claimed hours are excessive, redundant, or otherwise unnecessary." *Hernandez v.*

8   *Grullense*, Case No. 12-cv-3257-WHO, 2014 WL 1724356, at *5 (N.D. Cal. Apr. 30, 2014).

9   At the second step, "in appropriate cases, the district court may adjust the 'presumptively

10  reasonable' lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526

11  F.2d 67, 69-70 (9th Cir. 1975) . . . that have not been subsumed in the lodestar calculation." *Intel*

12  *Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993).  These factors are: (1) the time and

13  labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the

14  legal services properly; (4) the preclusion of other employment due to acceptance of the case; (5)

15  the customary fee; (6) the contingent or fixed nature of the fee; (7) the limitations imposed by the

16  client or the case; (8) the amount involved and the results obtained; (9) the experience, reputation,

17  and ability of the attorneys; (10) the undesirability of the case; (11) the nature of the professional

18  relationship with the client; and (12) awards in similar cases.  *Kerr*, 526 F.2d at 70.

19  In addition to attorney's fees, the ADA allows a district court to award litigation expenses

20  and costs.  42 U.S.C. § 12205.  "'Litigation expenses' include reasonable out-of-pocket expenses

21  that would normally be charged to a fees-paying client, such as expert witness fees, certain travel

22  expenses, and the preparation of exhibits." *Kalani*, 2016 WL 379623, at *4 (citing *Lovell v*

23  *Chandler*, 303 F.3d 1039, 1058-59 (9th Cir. 2002)).

24  ### III.   DISCUSSION

25  **A.   Defendants' Opposition**

26  As an initial matter, the Court strikes Defendants' opposition as untimely filed.  Civil Local

27  Rule No. 7-3(a) requires that "[t]he opposition must be filed and served not more than 14 days

28  after the motion was filed."  Here, Defendants' opposition was due by February 15, 2017, but

...

...

...

...

Plaintiff did not file an opposition until February 28, 2017, after the Court issued an order to show cause. (*See* Dkt. No. 101.) In the order to show cause, the Court required that Defendants file an opposition *and* explain why they did not file a timely opposition. (*Id.*) It further warned: "Failure to complete *both* tasks by February 23, 2017 may result in the Court granting Plaintiff's motion pursuant to Paragraph 22 of this Court's Standing Order, which states that '[t]he failure of the opposing party to file a memorandum of points and authorities in opposition to any motion shall constitute consent to the granting of the motion.'" (*Id.* (emphasis added).) Defendants failed to provide an explanation for their failure to provide a timely opposition, despite the order to show cause and the Court's February 24, 2017 order which required that Defendants' counsel "respond to the February 16, 2017 order to show cause by explaining why he did not file a timely opposition, as the opposition was originally due on February 15, 2017." (Dkt. No. 103.)[1] Because Defendants repeatedly failed to explain why they did not file a timely opposition, the Court strikes Defendants' opposition. As discussed below, however, even if the Court was to consider Defendants' opposition in its entirety, the Court's conclusions would not change.

### B. Request for Attorney's Fees, Expenses, and Costs

#### i. Prevailing Party

There is no dispute that Plaintiff is a prevailing party in this matter, and is therefore entitled to a fee award, expenses, and costs. Defendants' stricken opposition does not argue otherwise. Instead, Defendants attempt to re-litigate arguments that the Court already rejected in its summary judgment order, namely that Plaintiff may not have visited Defendants' business on May 2, 2014 (although there is no dispute that Plaintiff visited on July 9, 2014), and that even if he had visited on May 2, 2014, he was able to buy snacks and leave so that he did have full and equal enjoyment. (Defs.' Opp'n at 3.) As explained in the summary judgment order, first, there is no dispute of material fact over whether Plaintiff visited on May 2, 2014; Plaintiff's declaration that he visited on that date is sufficient, especially in the absence of evidence to the contrary.

---

[1] At most, Defendants' counsel stated that his computer server stopped working on February 23, 2017. (Dkt. No. 102 ¶ 1.) This computer problem does not explain why he failed to timely file his opposition on February 15, 2017, a date prior to the alleged February 23, 2017 computer problem.

7

(Summary Judgment Ord. at 7.) Second, "[s]imply because a disabled individual is able to carry out their intended purpose in visiting a business does not mean they have full and equal enjoyment; if a disabled individual is forced to overcome difficulties that a non-disabled individual does not, as is the case here, they do not have full and equal access." (*Id.* at 9.) Defendants provide no authority in support of their position, which is contrary to established Ninth Circuit law. *Compare with Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 908 (9th Cir. 2011) (finding that barriers in a Food 4 Less restroom impaired the plaintiff's full and equal enjoyment of the facility).

### ii. Stay

Defendants argue that because they have timely filed an appeal, the Court should stay any ruling on the instant motion pending the outcome of the appeal. (Defs.' Opp'n at 3-4.) The Ninth Circuit has "concluded that an appeal from the merits does not foreclose an award of attorney's fees by the district court." *Masalosalo by Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 956 (9th Cir. 1983). In so concluding, the Ninth Circuit explained that recognition of the district court's retained power to award attorney's fees even after the filing of a notice of appeal on the merits "best serves the policy against piecemeal appeals," and "will prevent postponement of fee consideration until after the circuit court mandate, when the relevant circumstances will no longer be fresh in the mind of the district judge." *Id.* at 957.

Courts have authority to stay a motion for attorney's fees while an appeal is pending. 1993 Advisory Committee notes to Fed. R. Civ. P. 54(d) ("If an appeal on the merits of the case is taken, the court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice, directing under subdivision (d)(2)(B) a new period for filing after the appeal has been resolved"); *see also Yenidunya Investments, Ltd. v. Magnum Seeds, Inc.*, No. CIV 11-1787 WBS, 2012 WL 538263, at *4-5 (E.D. Cal. Feb. 17, 2012) (acknowledging ability to stay or deny without prejudice a motion for attorney's fees, but declining to do so); *Dumas v. New United Motor Mfg. Inc.*, No. C 05-4702 PJH, 2007 WL 1880377, at *2 (N.D. Cal. June 29, 2007) (same). The Court declines to enter a stay on the instant motion because Defendants provide no reason why the Court should delay ruling. At most, they suggest that the motion would not be

"ripe" if the Ninth Circuit should rule in Defendants' favor. (Defs.' Opp'n at 3, 4.) Defendants have made no showing, however, that they are likely to prevail on an appeal. Therefore, a stay is not warranted.

### iii. Attorney's Fees

#### a. Reasonableness of the Hourly Rate

To determine the appropriate lodestar amount, the reasonableness of the hourly billing rate must be assessed. *Credit Managers Ass'n of S. Cal.,* 25 F.3d at 750. In doing so, the court must look to the prevailing market rates in the relevant community for similar work by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir. 2008). Generally, the relevant community is the forum where the district court sits. *Id.*

Here, Plaintiff's counsel claims an hourly rate of $400.00. (Mac Bride Decl. ¶ 20, Dkt. No. 98-1.) Attorney Mac Bride graduated from law school in 1998, and has been a practicing attorney since 1998. (Mac Bride Decl. ¶ 3.) Over the last thirteen years, Attorney Mac Bride asserts that he has been the principal attorney in over two hundred civil cases, including over eighty ADA cases since 2012.[2] (Mac Bride Decl. ¶ 20.) He has also conducted two trials: one in bankruptcy court and a criminal case in state court.

Defendants made no objections to the hourly rate claimed by Plaintiff's counsel. The Court, however, finds that the $400 hourly rate is not reasonable in the relevant community for similar work by attorneys of comparable skill. While Plaintiff compares Attorney Mac Bride's years of experience to *Hernandez*, where an attorney with twelve years of experience (five in ADA cases) was awarded an hourly rate of $425, it is not clear that the experience is comparable. (Plf.'s Mot. ¶ 20.) In *Hernandez*, the court specifically found that the attorney had been named a "Rising Star in 2011, 2012, and 2013 by *Northern California Super Lawyers*," and had "handled multi-million dollar cases through trial and appeal." 2014 WL 1724356, at *6. By contrast, there

---

[2] The Court previously observed that most of these cases were filed on behalf of Plaintiff. (Summary Judgment Ord. at 9 n.2.)

is no evidence here that Plaintiff has had similar levels of success, as he provides no information on the success of his ADA cases, and points only to a winning verdict in a bankruptcy case.[3] (Mac Bride Decl. ¶ 20.)  Instead, this case is comparable to *Rodgers v. Fitzgerald*, where the court declined to award a $450 hourly rate to an attorney with eleven years of experience, including five years of experience in disability access litigation.  Case No. 14-cv-985-DMR, 2016 WL 4658974, at *4 (N.D. Cal. Sept. 7, 2016).  There, the court observed that the plaintiff's counsel failed to provide information regarding her skill, experience, and reputation, instead stating only that she had resolved around one hundred ADA cases, the hourly rates awarded to other attorneys in complex ADA cases, and the *Laffey* matrix.  *Id.*  The plaintiff's counsel also did not provide any information about the ADA cases she "successfully litigated," the hourly rates received, or "a single declaration attesting to her skill, experience, or reputation." *Id.* at *5.  After noting that the plaintiff's counsel had been awarded hourly rates of $300 and $150 in prior cases that had gone to trial, as well as the criticisms of the judges involved in those cases, the court reduced the hourly rate sought to $325.  *Id.*

      Here, Attorney Mac Bride likewise provides little information beyond the number of years he has practiced, as well as the number of cases he had handled.  The number of years he has practiced and the number of cases he has handled, however, does not necessarily show he has the experience and skill necessary to warrant a $400 hourly rate.  The Court finds that an hourly rate of $350 is reasonable; notably, this rate was recently awarded to Attorney Mac Bride in a Northern District of California case that proceeded to default judgment.  *Castillo-Antonio v. Alvarez*, Case No. 16-cv-352 NC, 2016 WL 4267739, at *4 (N.D. Cal. July 22, 2016.)  The Court has been given no reason to believe that Attorney Mac Bride is now entitled to a higher hourly rate than that which was previously awarded, particularly where the majority of the work performed in the instant case was done *prior* to the 2016 award.  This rate is also comparable to that awarded in other cases to attorneys with similar numbers of years of experience.  *See Rodgers*, 2016 WL 4658974, at *5; *Kalani*, 2016 WL 379623, at *5 (awarding hourly rate of $350 for an attorney

---

[3] While Mr. Mac Bride points to a number of defense-side ADA cases he handled, none of those cases involved any apparent substantive motions.  (*See* Mac Bride Decl. ¶ 20.)

1  who stated that she had prosecuted close to 1,000 civil rights actions in more than fifteen years of

2  practice, which included seven years spent specializing almost exclusively in disability access

3  litigation). Therefore, the Court reduces the hourly rate sought from $400 to $350.

        b. Hours

In order to assess whether the number of hours billed is reasonable, Defendants must submit detailed records justifying the hours that have been expended. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986). The court may reduce the hours through its discretion "where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Id.*

In the instant fee motion, Plaintiff seeks reimbursement of 188.4 hours by Attorney Mac Bride, as well as 16.75 hours by Attorney Mac Bride for bringing this motion. (Plf.'s Mot. ¶ 1.) In support, Plaintiff provides time sheets. (Mac Bride Decl., Exh. 1; Supp. Mac Bride Decl., Exh. 1, Dkt. No. 107.) Plaintiff notes that "[t]his case did not follow a routine procedural course," arguing that "Defendants caused delay in the discovery process, and did not obey court procedures and orders on several occasions." (Plf.'s Mot. ¶ 11.)

Defendants do not state any objections to the hours sought, except to argue that "this case had a procedural history with very little court involvement. There were not any motions to compel discovery response or any other motions, other than Plaintiff's motion for partial summary judgment." (Defs.' Opp'n at 2.)

Defendants' statement is, to put it lightly, a mischaracterization of the record. There were multiple motions in this case, many concerning Defendants' failure to cooperate in discovery. For example, Defendants Sadia Ghani Iqbal and Wassem Iqbal refused to provide basic information, such as a current address, highest level of education, and date of birth. (*See* Dkt. No. 69 ¶¶ 6, 9.) When Plaintiff attempted to engage in the joint letter process as required by the Court's standing order, Defendants repeatedly refused to participate. (*Id.* ¶ 6.) Even after the Court issued an order requiring Defendant Sadia Ghani Iqbal provide her portion of the joint letter, Defendant failed to

1   do so.[4] (*Id.* ¶ 7.) The Court then issued a second order requiring Defendants to provide their

2   portion of the joint letter. (Dkt. No. 70 at 2.) The Court also issued an order to show cause,

3   requiring Defendants' counsel to explain why sanctions should not be imposed for failing to

4   comply with the Court's order. (*Id.* at 3.) Only then did Defendants provide the information

5   sought. (Dkt. No. 78 (stating that "after further thought, the Defendants decided to provide the

6   information to Plaintiff's Attorney").) Defendants have also repeatedly failed to comply with

7   Court orders. *See* Dkt. No. 26 (Defendants' failure to participate in the filing of a case

8   management conference and to appear at the case management conference); 60 (Defendants'

9   failure to advise the court of dates for a settlement conference); 92 (order to show cause regarding

10  Defendants' failure to provide a chambers copy of their opposition to Plaintiff's motion for

11  summary judgment, after the Court had already issued an order requiring a chambers copy); 101

12  (order to show cause regarding Defendants' failure to provide a timely opposition to the instant

13  motion). Given this history, the Court agrees with Plaintiff that this was not a routine ADA case.

14         That said, the Court also finds that a significant number of Attorney Mac Bride's entries

15  are excessive, unnecessary, or not recoverable. First, Attorney Mac Bride has billed for activities

16  that did not or should not have taken place. Specifically, on August 15, 2016, Attorney Mac Bride

17  billed one hour to prepare for a case management conference the following day. (Mac Bride

18  Decl., Exh. 1 at 7.) On August 16, 2016, Plaintiff billed two hours to attend the case management

19  conference. (*Id.*) That case management conference, however, never occurred, as the Court had

20  continued the case management conference to September 27, 2016 in a clerk's notice dated August

21  10, 2016, *prior* to Attorney Mac Bride preparing for the case management conference. (Dkt. No.

22  53.) Attorney Mac Bride cannot recover for preparing for a case management conference that he

23  knew was moved, nor can he recover for attending a case management conference that did not

24  take place.

25         Second, Attorney Mac Bride includes multiple entries for electronic filing. These are

26  clerical tasks, which cannot be recovered in a motion for attorney's fees. *See Rodgers v. Claim*

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

28  [4] Defendants' counsel later attributed this failure to an e-mail issue, but this does not explain why Defendants failed to participate in the joint letter process in the first place. (*See* Dkt. No. 78 at 2.)

*Jumper Restaurant, LLC*, Case No. 13-cv-5496 YGR, 2015 WL 1886708, at *9 (N.D. Cal. Apr. 24, 2015) (eliminating time entries for clerical work, including e-filing); *see also Nadarajah v. Holder*, 569 F.3d 906, 921 (agreeing that "the filing, transcript, and document organization time was clerical in nature and should have been subsumed in firm overhead rather than billed at paralegal rates").  Attorney Mac Bride cannot recover for time spent e-filing.

Third, many of the entries are excessive.  For example, on July 20, 2014, Mr. Mac Bride charged 2.5 hours to draft the complaint and summons, despite the complaint being word-for-word the same as a complaint filed by Mr. Mac Bride on July 18, 2014, with the exception of seven paragraphs.  (Compare Dkt. No. 1 ¶¶ 1-2, 5-6, 9-10, 13, 15-71 *with* Case No. 14-cv-3265-KAW, Dkt. No. 1 ¶¶ 1-2, 5-6, 9-10, 13, 15-71.)  Similarly, on August 12, 2016, Attorney Mac Bride charged two hours to draft a proposed second amended complaint, despite this second amended complaint adding only two paragraphs and one phrase to the first amended complaint.  Such billing is unreasonable.  Attorney Mac Bride also billed eight hours to attend a settlement conference that, according to the Court's minutes, lasted only 3.25 hours.  (*See* Mac Bride Decl., Exh. 1 at 6; Dkt. No. 50.)  Even adding two hours for travel, this entry is excessive.  Finally, Attorney Mac Bride has charged significant amounts of time to reviewing documents and court orders that are extremely short.  For example, Attorney Mac Bride charged .4 hours to review an order to show cause that in relevant part, comprised of half a page of text and was directed solely at Defendants' counsel.  (Mac Bride Decl., Exh. 1 at 8; Dkt. No. 92.)  The time claimed is simply not reasonable.  *Compare with Kalani*, 2016 WL 379623, at *8 (finding it unreasonable to spend 12 minutes to review a one-paragraph request for telephonic appearance, or 24-minutes to review a 16-line order).

The Court therefore reduces Plaintiff's billed time as follows:

|    | Date    | Activity Description          | Hours Billed | Hours Reduced | Hours Awarded | Explanation |
|----|---------|-------------------------------|--------------|---------------|---------------|-------------|
| 1. | 7/20/14 | Draft complaint and summons   | 2.5          | 1.5           | 1.0           | Complaint is word for word identical to a complaint filed on July 18, 2014, with the exception of ¶¶ 3, 4, 7, 8, 11, 12, and 14. |
| 2. | 7/22/14 | File complaint and            | .1           | .1            | 0             | Clerical work. |

13

| | | | | | | |
|---|---|---|---|---|---|---|
| | | proposed summons | | | | |
| 3. | 7/23/14 | Review scheduling order | .4 | .3 | .1 | Standard General Order 56 order. *See Kalani v. Starbucks Corp.*, Case No. 13-cv-764-LHK, 2016 WL 379623, at *8 (N.D. Cal. Feb. 1, 2016) (finding .1 hour entries in reviewing routine documents such as the Scheduling Order for ADA cases to be unreasonable). |
| 4. | 12/2/14 | Review order granting leave to amend complaint (Dkt. No. 10) | .2 | .1 | .1 | Order is six sentences long. |
| 5. | 12/2/14 | Review amended scheduling order (Dkt. No. 11) | .3 | .2 | .1 | Standard General Order 56 order. |
| 6. | 12/6/14 | File first amended complaint | .1 | .1 | 0 | Clerical work. |
| 7. | 5/5/15 | Draft notice of need for mediation | .2 | .1 | .1 | Standard court form, requiring only the input of the party names, date of joint inspection, and date of the filing. |
| 8. | 1/12/16 | Draft separate case management statement; file it | .5 | .1 | .4 | Clerical work. |
| 9. | 2/4/16 | Review order setting hearing on reassignment (Dkt. No. 31) | .3 | .2 | .1 | Order is 1-page, setting the case management conference and joint case management conference due date, and listing the appropriate initials to use. |
| 10. | 2/5/16 | Draft and file declaration of non-availability | .2 | .1 | .1 | Clerical work. |
| 11. | 2/15/16 | Draft and file stipulation to reschedule hearing. | .6 | .1 | .5 | Clerical work. |
| 12. | 2/23/16 | File joint case management statement. | .1 | .1 | 0 | Clerical work. |
| 13. | 3/17/16 | Review Case Management and Pretrial Order (Dkt. No. 38) | .8 | .3 | .5 | Counsel already claimed .3 hours to review the same order on 3/16/16. 1.1 hours to review the order is excessive. |
| 14. | 6/7/16 | Review order referring case to settlement judge (Dkt. No. 41) | .2 | .1 | .1 | Order is two sentences long. |
| 15. | 6/10/16 | Review order on request for further | .3 | .1 | .2 | Order is four paragraphs long. |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | case management conference (Dkt. No. 43) | | | | |
| 16. | 7/8/16 | Further settlement call with Judge Kim (Dkt. No. 48) | .3 | .1 | .2 | Call lasted 9 minutes. |
| 17. | 8/1/16 | Attend settlement conference in San Francisco. | 8.0 | 2.0 | 6.0 | Settlement conference lasted 3.25 hours. (Dkt. No. 50.) |
| 18. | 8/10/16 | Review order for further settlement conference (Dkt. No. 52) | .3 | .2 | .1 | Order is one paragraph long. |
| 19. | 8/10/16 | Review order to attend further case management conference (Dkt. No. 52) | .2 | .2 | 0 | Same docket entry being reviewed as above, although mislabeled. |
| 20. | 8/12/16 | Communications with Defendants' counsel regarding stipulating to filing of second amended complaint (1.0). Draft second amended complaint, send to Defendants' counsel. (2.0) | 3.0 | 1.2 | 1.8 | Two hours is unreasonable to draft second amended complaint. When compared to the first amended complaint, the proposed second amended complaint added a total of two paragraphs and one additional phrase. Sending the amended complaint to defense counsel also constitutes clerical work. |
| 21. | 8/15/16 | Review documents and prepare for case management conference. | 1.0 | 1.0 | 0 | The August 16, 2016 case management conference was continued to September 27, 2016, as stated in an August 10, 2016 docket entry. (Dkt. No. 53.) |
| 22. | 8/16/16 | Attend further case management conference. | 2.0 | 2.0 | 0 | No case management conference took place on August 16, 2016. |
| 23. | 9/6/16 | Review order to attend settlement conference. (Dkt. No. 60.) | .2 | .1 | .1 | Order is one paragraph long. |
| 24. | 9/21/16 | Review court orders on joint discovery letter and request for miscellaneous relief. (Dkt. Nos. 66, 67.) | .6 | .4 | .2 | Combined, the orders are two pages long (including captions). |
| 25. | 9/21/16 | Draft and file Plaintiff's declaration regarding barriers. | 1.0 | .1 | .9 | Filing is clerical work. |

15

| 26. | 10/10/16 | Draft and send joint case management conference statement. | 1.1 | .6 | .5 | The majority of the case management statement is word-for-word the same as the August 9, 2016 case management statement. |
|---|---|---|---|---|---|---|
| 27. | 10/20/16 | Draft joint case management statement. | 1.0 | .8 | .2 | One hour is not reasonable when Plaintiff's counsel already claimed he spent 1.1 hours on the statement previously. Further, the majority of the case management statement is word-for-word the same as the August 9, 2016 case management statement. |
| 28. | 11/23/16 | Review order to show cause. (Dkt. No. 92.) | .4 | .3 | .1 | Order is 1.25 pages long, and not directed at Plaintiff. |
| 29. | 11/30/16 | Review Defendants' response to order to show cause. (Dkt. No. 93.) | .3 | .2 | .1 | Response is two pages long, and not relevant to Plaintiff. |
| | | **TOTAL:** | 26.2 | 12.7 | 13.5 | |

Based on the above chart, the Court reduces the hours billed by 12.7 hours, leaving 175.7 hours. In addition, given the number of unreasonable entries -- including, for example, billing three hours for activities that did not occur and charging two hours of time to add two paragraphs and one phrase to a proposed amended complaint -- the Court has concerns that other entries not specifically identified above are also excessive.[5] The court has discretion to "impose a small reduction, no greater than 10 percent--a 'haircut'--based on its exercise of discretion and without a more specific explanation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008); *see also Hernandez*, 2014 WL 1724356, at *15. The Court therefore reduces the remaining billed hours by 10%, leaving a total of 158.13 hours.

---

[5] Many of these entries involve activities that occurred only between the parties, and therefore the Court cannot independently determine whether the time spent was actually reasonable. For example, Attorney Mac Bride charges 8.1 hours to attend a mediation; although the docket entry does not state how long this mediation lasted; given how Attorney Mac Bride charged 8 hours to attend a 3.25 hour settlement conference, the Court has concerns that he has similarly overcharged for his attendance of the mediation as well. Nevertheless, Defendants did not object to the amount.

With respect to the 16.75 hours spent on the motion for attorney's fees, Attorney Mac Bride provided his time sheet in a supplemental declaration. (Dkt. No. 107.) The Court has concerns with why it would take Attorney Mac Bride 4.75 hours[6] to prepare his nine exhibits, which consist solely of pre-existing documents, such as deposition excerpts, filings from cases reviewed by Attorney Mac Bride in preparation for the motion for attorney's fees, and web results. (*See* Dkt. No. 107-1; Mac Bride Decl., Exhs. 2-9.) The last exhibit, Attorney Mac Bride's time sheet, does indeed consist of 141 time notations, but these notations were presumably made during the course of this litigation, not compiled from scratch after the litigation was already completed. Further, the preparation of exhibits is more appropriately clerical or, at best, paralegal work. *See Civil Beat Law Ctr. for the Pub. Interest v. Ctrs. for Disease Control & Prevention*, Civil No. 16-00008 JMS-KSC, 2017 U.S. Dist. LEXIS 22971, at *30 (D. Haw. Jan. 31, 2017) ("Counsel billed for a number of clerical tasks such as preparing/filing/sending documents, scheduling, and preparing exhibits. . . . [A] clerical task is non-compensable, whether billed at an attorney or paralegal rate"); *Sound v. Koller*, Civil No. 09-409 JMS/KSC, 2010 WL 1992194, at *7 (D. Haw. May 19, 2010) (deeming finalizing and compiling exhibits as clerical tasks, but that it could be compensated at a paralegal rate). Accordingly, the Court reduces the 4.75 hours spent on these tasks to 2.75 hours, leaving a total of 14.75 hours.

For the reasons stated above, the Court awards attorney's fees of $55,345.50 (158.13 x $350), as well as $5,162.50 (14.75 x $350) for the instant motion, for a total of $60,508.00.

### iv. Costs and Expenses

In addition to attorney's fees, Plaintiff seeks $8,330.19 in costs and litigation expenses. In their stricken opposition, Defendants did not object to any of the costs or expenses. Therefore, the Court awards $8,330.19 in costs and expenses. *See Hernandez*, 2014 WL 1724356, at *15-16 (deeming the defendants' argument that the plaintiff was required to file a Bill of Costs as moot because the plaintiff had submitted the relevant documentation to "enabl[e] the Court to determine the reasonableness of the claimed costs, and awarding consultant fees and other costs); *Rodgers*,

---

[6] This time also includes drafting the proposed order and notice of motion. Combined, these filings comprise of approximately two paragraphs of text.

2015 WL 1886708 at *14 (awarding costs and expenses, and noting that "a plaintiff can be awarded costs before a Bill of Costs is filed"); *Kalani*, 2016 WL 379623, at *10 (awarding litigation expenses and costs).

### C. Miscellaneous Relief

In addition to attorney's fees, Plaintiff also requests miscellaneous relief, namely: (1) correcting the spelling of Defendant Wassem Iqbal's name; and (2) amending the names of Defendants Sara Iqbal, Wassem Iqbal, and Bushra Begum to, respectively, "Sara Iqbal, individually and dba 76 El Cerrito," "Wassem Iqbal aka Waseem Iqbal aka Wassem Ghani Iqbal, individually and dba 76 El Cerrito," and "Bushra Begum aka Bushra Begum Iqbal, individually and dba 76 El Cerrito." (Plf.'s Mot. ¶¶ 26, 33.) In their stricken opposition, Defendants did not oppose this request. Accordingly, and pursuant to the Court's standing order, the Court deems Defendants' failure to oppose as consent to the granting of the motion, and GRANTS Plaintiff's motion for miscellaneous relief. (Westmore Standing Ord. ¶ 22 ("The failure of the opposing party to file a memorandum of points and authorities in opposition to any motion shall constitute consent to the granting of the motion").)

### IV. CONCLUSION

For the reasons stated above, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion for attorney's fees, litigation expenses, and costs, and awards $60,508.00 in attorney's fees, and $8,330.19 in costs and expenses. The Court GRANTS Plaintiff's unopposed request for miscellaneous relief to modify the names of Defendants to: "Sara Iqbal, individually and dba 76 El Cerrito," "Wassem Iqbal aka Waseem Iqbal aka Wassem Ghani Iqbal, individually and dba 76 El Cerrito," and "Bushra Begum aka Bushra Begum Iqbal, individually and dba 76 El Cerrito."

///
///
///
///
///

1  The Court also notes that in its summary judgment order, it ordered that in light of Plaintiff
2  stating that he would be dropping any remaining claims in this case, Plaintiff was to file a notice
3  of voluntary dismissal of any remaining claims by February 3, 2017. (Summary Judgment Ord. at
4  12.) No such dismissal has been filed. Therefore, the Court ORDERS Plaintiff to file his notice
5  of voluntary dismissal of any remaining claims within 14 days of the date of this order.
6  IT IS SO ORDERED.
7  Dated: March 24, 2017

KANDIS A. WESTMORE
United States Magistrate Judge

19